1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ESTATE OF ARMANDO OSUNA,              No. 1:18-cv-01240-DAD-SAB
     NANCY OSUNA, and PAUL OSUNA,
12
                     Plaintiffs,
13                                          ORDER GRANTING DEFENDANTS'
              v.                            MOTION TO DISMISS IN PART
14
     COUNTY OF STANISLAUS,                  (Doc. No. 9)
15   STANISLAUS COUNTY SHERIFF'S
     DEPARTMENT, ADAM
16   CHRISTIANSON, and DOE 1 to 50,

17                   Defendant.

18

19          This matter is before the court on a motion to dismiss plaintiffs' complaint filed on behalf

20   of defendants.  (Doc. No. 9-1.)  A hearing on the motion was held on December 18, 2018.

21   Attorney Mark Merin appeared in person on behalf of plaintiffs.  Attorney John Whitefleet

22   appeared telephonically on behalf of defendants.  Having reviewed the parties' submissions, and

23   having heard from counsel, defendants' motion will be granted in part and denied in part for the

24   reasons explained below.

25                                    **BACKGROUND**

26          This action arises from the death of Armando Osuna (the "decedent") on or about May 29,

27   2018.  In their complaint, plaintiffs allege as follows.  On the date in question, the decedent

28   returned to a house from which he and his wife, plaintiff Nancy Osuna, had been evicted in order

                                              1

to ascertain when furniture that they had left behind would be made available to them so that the decedent could arrange for a truck to pick it up. (Doc. No. 1 at ¶¶ 13–15.) The owner of the property told the decedent to leave the premises and called defendant Stanislaus County Sheriff's Department (the "Sheriff's Department"). (*Id.* at ¶ 16.) Deputies from the Sheriff's Department responded to the call and encountered the decedent on the street near the house. (*Id.* at ¶ 17.) Sometime thereafter, the unarmed decedent was shot by the deputies. (*Id.* at ¶ 18.) He was transported to a nearby hospital; he later lost his life as a result of this incident. (*Id.* at ¶ 19.)

On September 12, 2018, the estate of the decedent (the "estate"), Nancy Osuna, and the decedent and Nancy Osuna's son, Paul Osuna (collectively, "plaintiffs") filed this complaint against defendants County of Stanislaus (the "County"), the , Stanislaus County Sheriff's Department, Stanislaus County Sheriff Adam Christianson, and Doe Defendants 1–50 (collectively, "defendants"). (Doc. No. 1.) Doe Defendants 1–25 were deputies employed by the Sheriff's Department who responded to the property owner's call and encountered Mr. Osuna on the street. (*Id.* at 3–4.) Doe Defendants 26–50 were policy-makers for the county and/or the Sheriff's Department responsible for policies relating to training, supervision, and discipline of law enforcement officers. (*Id.* at 4.)

Plaintiff bring the following eight causes of action: (1) unreasonable force in violation of Mr. Osuna's Fourth Amendment rights, asserted by the estate against all defendants; (2) deprivation of familial association, companionship, and society in violation of the Fourteenth Amendment, asserted by Nancy and Paul Osuna against Doe defendants 1–25; (3) deprivation of association, companionship, and society in violation of the First Amendment, asserted by Nancy and Paul Osuna against Doe defendants 1–25; (4) unreasonable force in violation of Article I, Section 13 of the California constitution, asserted by the estate against all defendants; (5) Bane Act violations alleging unreasonable force and deprivation of familial association, companionship, and society, asserted by all plaintiffs against all defendants; (6) assault and battery claims asserted by the estate against Stanislaus County, the Stanislaus County Sheriff's Department, and Doe defendants 1–25; (7) a negligence claim asserted by the estate against all defendants, and (8) a wrongful death claim asserted by Nancy and Paul Osuna against all

defendants. (*Id.* at 7–19.) The complaint also alleges that multiple incidents of police misconduct have recently occurred involving the Sheriff's Department, frequently resulting in large monetary settlements being reached or jury verdicts in favor of plaintiffs being returned. (*See id.* at ¶ 23.) Based upon those previous incidents, plaintiffs allege a pattern and practice of police misconduct.

On November 5, 2018, defendants filed the instant motion to dismiss. (Doc. No. 9-1.) On December 4, 2018, plaintiffs filed an opposition to the motion to dismiss. (Doc. No. 13.) On December 11, 2018, defendants filed a reply to the opposition. (Doc. No. 14.)

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. *See also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by

1    mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to assume that the

2    plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws

3    in ways that have not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State*

4    *Council of Carpenters*, 459 U.S. 519, 526 (1983).

5                                                   **DISCUSSION**

6                Defendants advance multiple arguments in support of their motion to dismiss.  Each is

7    addressed in turn below.

8    **A.        Use of Doe Defendants Does Not Violate Federal Rule of Civil Procedure 8(a)(2).**

9                Defendants argue that the naming of Doe defendants by plaintiffs violates Federal Rule of

10   Civil Procedure 8(a)(2) because "[p]laintiffs do not identify each doe defendant and his or her

11   alleged act or omission" and "vague and generalized allegations . . . [are] insufficient to put

12   prospective defendants on notice of their alleged actions or omissions."  (Doc. Nos. 9-1 at 4; 14 at

13   3); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading . . . must contain:  a short and plaint statement of

14   the claim showing that the pleader is entitled to relief.").  Defendants' argument is not persuasive.

15               It is true that the use of Doe defendants in federal courts is "generally disfavored."  (Doc.

16   No. 9-1 at 4) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).  However, as the

17   court in *Gillespie* noted

18                          situations arise, such as the present, where the identity of alleged
                            defendants will not be known prior to the filing of a complaint.  In
19                          such circumstances, the plaintiff should be given an opportunity
                            through discovery to identify the unknown defendants, unless it is
20                          clear that discovery would not uncover the identities, or that the
                            complaint would be dismissed on other grounds.
21

22   629 F.2d at 642.  Here, defendants do not contend that discovery will not uncover the identities of

23   the Doe defendants and, as reflected in this order, the court does not find that the complaint

24   should be dismissed on other grounds.  Moreover, plaintiffs have alleged all the information

25   about the Doe defendants as plaintiffs possess at this juncture of the litigation.  In this regard, the

26   complaint alleges that Doe defendants 1–25 are or were deputies of the Stanislaus County

27   Sheriff's Department who encountered the decedent on the day that he was killed, and that Doe

28   defendants 26-50 are or were policymakers for Stanislaus County or the Sheriff's Department

                                                          4

who are or were responsible for policies relating to training, supervision, and discipline of law enforcement officers. (Doc. No. 1 at 3–4.) Defendants' contention that plaintiffs "should be required to identify the unnamed defendants as best as possible, and allege specific acts that these doe defendants did," (Doc. No. 9-1 at 4), is unavailing because plaintiffs *have* alleged as best as possible at this time facts regarding the Doe defendants, and "[they] do not have access to any further information concerning these parties, including their identities, because, as far as plaintiffs know, 'the only witness other than the officers was killed during the encounter.'" (Doc. No. 12 at 11) (quoting *Gonzalez v. City of Anaheim*, 747 F.3d 789, 795 (9th Cir. 2014)).  *See Wells v. Kendall*, No. 2:17-cv-2709 AC P, 2019 WL 1787172, *5 (E.D. Cal. Apr. 24, 2019); *Powe v. Nevada*, No. 2:17-cv-00470-JAD-GWF, 2019 WL 918982, at *(D. Nev. Feb. 22, 2019) ("Although the use of the 'Doe' placeholder to identify a defendant is not favored, flexibility is allowed in some cases where the identity of the parties will not be known prior to filing a complaint but can subsequently be determined through discovery.").

Accordingly, the court finds that plaintiffs naming of Doe defendants does not violate Rule 8(a)(2).

**B.      The Sheriff's Department is a Properly Named Defendant.**

Next, defendants contend that the Stanislaus County Sheriff's Department should be dismissed from this action as duplicative because it is not a separate legal entity apart from the County, which is also named as a defendant. (Doc. No. 9-1 at 5.)

Whether a party has the capacity to be sued in federal court is governed by Federal Rule of Civil Procedure 17(b)(3), which states that the capacity to be sued is determined by the law of the state in which the court is located. California Government Code § 945 provides that "[a] public entity may sue or be sued." Meanwhile, California Government Code § 811.2 defines a "public entity" to include "the state, the Regents of the University of California, the Trustees of the California State University and the California State University, a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State."

It appears that only one district court has held that a sheriff's department is not a "public entity" under California law. *See Garcia v. Los Angeles County*, 588 F. Supp. 700, 707 (C.D.

Cal. 1984). However, that conclusion was subsequently rejected by the Ninth Circuit, which held that the San Jose Police Department could be sued in federal court. *Shaw v. State of Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 605 n.1 (9th Cir. 1986). Defendants contend that *Shaw* was based on a misapplication of the California Supreme Court's decision in *Peterson v. City of Long Beach*, 24 Cal. 3d 238 (1979). (Doc. No. 14 at 3–4.) Defendants' argument in this regard is unpersuasive. In *Shaw* the Ninth Circuit did not rely on the decision in *Peterson* in concluding that a police department was a separately suable public entity; instead, the court relied on *Peterson* to reject the notion that a public entity must have some degree of sovereignty. 788 F.3d at 605. The undersigned concludes there is no basis upon which to dismiss the Stanislaus County Sheriff's Department from any of plaintiffs' state law causes of action.

The somewhat more complicated question is whether the Stanislaus County Sheriff's Department is a "person" within the meaning of 42 U.S.C. § 1983 and may be properly named as a defendant as to claim brought pursuant to that provision. In seeking dismissal, defendants cite to a concurring opinion in *United States v. Kama*, 394 F.3d 1236 (9th Cir. 2005) (Ferguson, J., concurring) [1], which stated that "municipal police departments and bureaus are generally not considered 'persons' within the meaning of 42 U.S.C. § 1983." 394 F.3d 1236, 1239–40. Defendants misconstrue this opinion. In reaching that conclusion, the concurring opinion cited to the Ninth Circuit's decision *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995), which held that the Tacoma Narcotics Enforcement Team was not a "person" under § 1983 because it was an intergovernmental task force composed of several local, county, and state governmental entities, rather than a separate legal entity unto itself. 65 F.3d 784, 791–92 (9th Cir. 1995). Because this case includes claims against a sheriff's department, and not an intergovernmental association, the court finds *Hervey* to be of only limited guidance. Moreover, the concurring opinion in *Kama* also relied upon an Eleventh Circuit decision in *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir.

---

[1] Defendants also cite to this court's order in *Payne v. City of Calaveras*, No. 1-17-cv-00906-DAD-SKO, 2018 WL 3637016, at *3 (E.D. Cal. July 30, 2018), where the undersigned held that subdivisions of counties are not "persons" under 42 U.S.C. § 1983. For the same reasons discussed in this order, however, the court *sua sponte* reconsidered that order on December 14, 2018 and vacated the portion of it that defendants rely on here. *See Payne v. Cty. of Calaveras*, No. 1:17-cv-00906-DAD-SKO, 2018 WL 6593347, at *5 (E.D. Cal. Dec. 14, 2018).

1992), which found that because the county sheriff's department lacked the capacity to be sued *under Alabama law*, it could not be sued under § 1983. However, California law is to the contrary. *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 n.2 (9th Cir. 1988) ("Municipal police departments are 'public entities' under California law and, hence, can be sued in federal court for alleged civil rights violations.").

More recently, the Ninth Circuit has permitted an action under § 1983 to proceed against a California sheriff's department notwithstanding the department's contention that it is not a "person" within the meaning of § 1983. *Streit v. County of Los Angeles*, 236 F.3d 552, 564–65 (9th Cir. 2001) (affirming the district court's holding that when the Los Angeles County Sheriff's Department acts on behalf of the County, it is subject to liability under 42 U.S.C. § 1983); *see also Brewster v. Shasta County*, 275 F.3d 803, 807 (9th Cir. 2001) (finding that the Shasta County Sheriff is subject to liability under § 1983 after concluding that the "Shasta County Sheriff acts for the County, not the state, when investigating crime in the county"). The undersigned concludes that these binding decisions control resolution of this issue, and therefore will deny defendants' motion to dismiss the Stanislaus County Sheriff's Department as a defendant in this action.[2]

---

[2]  The court acknowledges that numerous district courts within the Ninth Circuit have ruled that sheriff's departments and police departments are not "persons" within the meaning of § 1983, and have dismissed them as defendants on that basis. *See, e.g.*, *Pearson v. Bakersfield Police Dep't*, No. 1:18-cv-0372-LJO-JLT, 2018 WL 3198065, at *5 (E.D. Cal. June 27, 2018); *Cartee v. Imperial Cty. Sheriff's Dep't*, No. 3:18-cv-00327-CAB-AGS, 2018 WL 2411742, at * 3 (S.D. Cal. May 29, 2018) ("[D]epartments of municipal entities are not 'persons' subject to suit under § 1983; therefore, a local law enforcement department (like the Imperial County Sheriff's Department) is not a proper party."); *Anderson v. Sacramento Police Dep't*, No. 2:16-cv-0527-TLN-GGH PS, 2016 WL 3091162, at *4 (E.D. Cal. June 2, 2016) (same); *Gomez v. County of Fresno*, No. 1:16-cv-00122-AWI-BAM, 2016 WL 8730877, at *2 (E.D. Cal. Feb. 12, 2016) (same); *Rodriguez v. County of Contra Costa*, No. C 13-02516 SBA, 2013 WL 5946112, at *3 (N.D. Cal. Nov. 5, 2013) (same); *Gonzales v. City of Clovis*, No. 1:12-cv-00053-AWI, 2013 WL 394522, at *13 (E.D. Cal. Jan. 30, 2013) ("The Clovis Police Department is a municipal department within the City of Clovis, and is not, as a general matter, considered a 'person' within the meaning of Section 1983."). The undersigned has considered these decisions but comes, as have other district courts, to the opposite conclusion. *See, e.g.*, *Payne v. County of Calaveras*, No. 1:17-cv-00906-DAD-SKO, 2018 WL 6593347, at *3 (E.D. Cal. Dec. 14, 2018); *Olvera v. County of Sacramento*, 932 F. Supp. 2d 1123, 1172 n.17 (E.D. Cal. 2013); *Foster v. Berkeley Police Dep't*, No. C 10-3703 SI, 2011 WL 5861266, at *11 (N.D. Cal. Nov. 22, 2011).

**C.      The Estate Has Sufficiently Pled its *Monell* Claims Against the County.**

Next, defendants seek dismissal of the plaintiffs estate's cause of action for excessive use of force against the County.  Defendants contend that this cause of action, brought on a theory of *Monell* liability, is not supported by sufficient factual allegations in the complaint to establish a policy or custom.  (Doc. No. 9-1 at 5–7); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

It is well-established that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Id.* at 692; *see also Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). To state a *Monell* claim against the County, plaintiff "must demonstrate that an 'official policy, custom, or pattern' on the part of [the County] was 'the actionable cause of the claimed injury.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008)).  A *Monell* claim can be established in one of three ways.  *See Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014).  First, a local government may be held liable when it acts "pursuant to an expressly adopted policy."  *Id.* (citing *Monell*, 436 U.S. at 694); *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004).  Second, a public entity may be held liable for a "longstanding practice or custom."  *Thomas*, 763 F.3d at 1170. Such circumstances may arise when, for instance, the public entity "fail[s] to implement procedural safeguards to prevent constitutional violations" or when it fails to adequately train its employees.  *Tsao*, 698 F.3d at 1143 (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."); *Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (requiring a plaintiff asserting a claim based on a failure to train to allege facts showing that defendants "disregarded the known or obvious consequence that a particular omission in their training program would cause municipal employees to violate citizens' constitutional rights") (internal brackets omitted) (quoting *Connick*, 563 U.S. at 61).  "Third, a local government may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-

making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Clouthier v. County of Santa Clara*, 591 F.3d 1232, 1250 (9th Cir. 2010) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)), *overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (en banc).

Defendants' motion raises two separate challenges to the sufficiency of the complaint with respect to its *Monell* cause of action. First, defendants contend that the complaint contains factual allegations regarding an insufficient number of incidents so that the allegations do not adequately demonstrate the existence of a policy or custom. (Doc. No. 9-1 at 5–6.) Second, defendants argue that even if the complaint sufficiently alleges the existence of a policy or custom, it does not contain allegations describing the alleged county policy in sufficient detail. (*Id.* at 6.) Each argument is addressed below.

1.    Plaintiff Has Alleged a Sufficient Number of Incidents.

"Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding modified on other grounds by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001); *see also Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) ("A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom."); *Cain v. City of Sacramento*, No. 2:17-cv-00848-JAM-DB, 2017 WL 4410116, at *3 (E.D. Cal. Oct. 4, 2017) (dismissing the plaintiff's *Monell* claim because it alleged only a single encounter between plaintiff and jail staff). Although "[i]t is difficult to discern from the caselaw the quantum of allegations needed to survive a motion to dismiss a pattern and practice claim," *Gonzalez v. County of Merced*, No. 1:16-cv-01682-LJO-SAB, 2017 WL 6049179, at *2 (E.D. Cal. Dec. 7, 2017), "where more than a few incidents are alleged, the determination appears to require a fully-developed factual record." *Lemus v. County of Merced*, No. 1:15-cv-00359-MCE-EPG, 2016 WL 2930523, at *4 (E.D. Cal. May 19, 2016), *aff'd*, 711 Fed. App'x 859 (9th Cir. 2017); *see also Becker v. Sherman*, No. 1:16-cv-00828-AWI-MJS (PC), 2017 WL 6316836, at *9 (E.D. Cal. Dec. 11, 2017) (concluding that "four assaults related to [plaintiff's] housing assignment and status as

a transgender inmate . . . sufficiently alleged the existence of a CDCR custom"), *findings and recommendations adopted,* 2018 WL 623617 (E.D. Cal. Jan. 30, 2018); *Bagley v. City of Sunnyvale,* No. 16-CV-02250-JSC, 2017 WL 5068567, at *5 (N.D. Cal. Nov. 3, 2017) ("Where courts have allowed *Monell* claims to proceed at the motion to dismiss stage, plaintiffs have pled multiple incidents of alleged violations.").

As examples of previous incidents involving excessive use of force by Stanislaus County and Sheriff's Department employees, plaintiffs point to numerous prior cases in which defendants were either found liable or agreed to pay a substantial monetary sum to resolve excessive use of force claims brought against them. (*See* Doc. No. 1 at ¶ 23.) All of these alleged incidents appear to involve allegations of excessive use of force, and all of them occurred in the time period since defendant Christianson became the Stanislaus County Sheriff. (*Id.*) These include, but are not limited to: (1) a $565,000 settlement paid to plaintiffs in a case where Stanislaus County Sheriff's deputies allegedly used tasers and pepper spray against a mentally-ill detainee, resulting in his death; (2) a $200,000 settlement in which the plaintiffs alleged that Stanislaus County Sheriff's deputies used tasers against an individual suffering from a seizure, resulting in death; and (3) a $160,000 settlement in which the plaintiffs alleged that Stanislaus County Sheriff's deputies made false arrests and used excessive force against two individuals. (*Id.*) Whether these previous cases are all manifestations of the same policy or custom, and whether that policy or custom was the moving force behind the injury to decedent in this case, are factual issues to be determined following the discovery phase of this litigation. *See J.M. ex rel. Rodriguez v. County of Stanislaus*, No. 1:18-cv-01034-LJO-SAB, 2018 WL 5879725, at *6 (E.D. Cal. Nov. 7, 2018). The undersigned is satisfied that plaintiffs' complaint includes sufficient factual allegations in this regard to plausibly allege the existence of a policy or custom pursuant to *Monell*.

2.      The Complaint Describes the Policy or Custom in Sufficient Detail.

Defendants next contend that the estate "fails to plead specific facts describing in detail a county policy that was the moving force behind the alleged constitutional violations." (Doc. No. 9-1 at 6) (citation and internal quotation marks omitted).

/////

The Ninth Circuit has made clear that *Monell* claims "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). In addition to sufficient factual allegations, however, some district courts have held that plaintiffs must also identify the particular policy or custom that caused the constitutional violation without resorting to conclusory statements. *See Autry v. Cleveland Cty. Sheriff's Dep't*, No. CIV-15-1167-D, 2018 WL 719044, at *9 (W.D. Okla. Feb. 5, 2018) (dismissing plaintiffs' *Monell* claim after finding that plaintiffs "fail to identify a particular policy or practice . . . that was deficient"); *Noisette ex rel. Noisette v. City of Philadelphia*, No. CV 16-6419, 2017 WL 4765650, at *4 (E.D. Pa. Oct. 20, 2017) (noting that plaintiff "points to no specific times, dates, policy names, policy substance, or specificities about why the policies were inadequate"); *Johnson v. Cate*, No. 1:10-cv-00803-AWI, 2012 WL 1076209, at *3 (E.D. Cal. Mar. 29, 2012) (requiring plaintiff to "describ[e] in detail a county policy that was the moving force behind the alleged constitutional violations"). Other courts have adopted a more lenient pleading standard, holding that while a complaint must include a sufficient quantum of factual material to plausibly suggest the existence of a policy or custom, the policy or custom itself need not be specifically alleged, or may be alleged only in a general fashion. *See Duenez v. City of Manteca*, No. CIV. S-11-1820 LKK, 2012 WL 4359229, at *9 (E.D. Cal. Feb. 23, 2012) ("Plaintiffs need not articulate the intricacies of the alleged policy further at the pleading stage."); *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 842–43 (S.D. Tex. 2011) ("In the context of municipal liability . . . [the] allegations need not specifically state what the policy is, as the plaintiff will generally not have access to it, but may be more general.").

Certainly, the complaint must contain sufficient factual allegations to plausibly suggest a policy or custom, as opposed to merely random, unconnected acts of misconduct—and as the court has already found, plaintiffs have satisfied this burden at the pleading stage. Collectively, the factual allegations of a complaint asserting a *Monell* claims must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *see also City of Galveston*, 800 F. Supp. 2d at 843–44 ("Allegations that provide such notice could

include, but are not limited to, past incidents of misconduct to others, multiple harms that occurred to the plaintiff himself, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy."). The court concludes that the details of the alleged policy or custom, however, is a topic properly left to development through discovery. It is a rare plaintiff who will have access to the precise contours of a policy or custom prior to having engaged in discovery, and requiring a plaintiff to plead its existence in detail is likely to be no more than an exercise in educated guesswork. *See Creer v. Vallejo*, No. 2:14-cv-01428-JAM-DAD, 2015 WL 3795027, at *5 (E.D. Cal. June 17, 2015) (citing *City of Galveston*, 800 F. Supp. 2d at 842–43); *Mitchell v. Twp. of Pemberton*, No. CIV.09-810(NLH)(AMD), 2010 WL 2540466, at *6 (D.N.J. June 17, 2010) ("[I]nformation concerning a town's customs or policies, the policymakers' motivations behind such policies, or the facts surrounding police department customs, are typically unavailable to an outsider."). As one district court has thoughtfully concluded, a complaint alleging a *Monell* claim must "pair general averments of a policy or custom with particular examples." *Ulloa v. Prince George's County*, No. CV DKC 15-0257, 2015 WL 7878956, at *6 (D. Md. Dec. 4, 2015). Thus, although factual allegations of the complaint must plausibly allege the existence of a policy or custom that was the moving force behind the constitutional violation at issue, the policy or custom itself need only be alleged in general terms.

As noted above, the plaintiff estate has identified multiple prior instances of alleged misconduct by Stanislaus County and the Sheriff's Department in the complaint. In addition, the complaint alleges that these actions occurred due to either a lack of training, or a policy of employing excessive and unreasonable force. (Doc. No. 1 at ¶ 29.) These descriptions of the policies and customs at issue, although not particularly detailed, are sufficient at this stage of the litigation to place defendants on notice of the nature of the claims against them and allow them to prepare an adequate defense.

Accordingly, defendants' motion to dismiss for failure to adequately plead a *Monell* claim will be denied.

/////

**D.     The Excessive Force Claim Against Defendant Christianson is Deficient.**

Next, defendants seek dismissal of the first cause of action as to defendant Christianson. Therein, the plaintiff estate seeks to hold defendant Christianson liable for excessive use of force on a theory of supervisory liability. Defendants persuasively argue the complaint contains insufficient factual allegations against defendant Christianson to state a claim. (Doc. No. 9-1 at 7–8.)

"An official may be liable as a supervisor only if either (1) he or she was personally involved in the constitutional deprivation, or (2) a sufficient causal connection exists between the supervisor's wrongful conduct and the constitutional violation." *Felarca v. Birgeneau*, 891 F.3d 809, 819–20 (9th Cir. 2018) (internal quotation marks omitted); *see also Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991) (noting that whether a supervisor in his individual capacity is liable for a failure to supervise "hinges upon his participation in the deprivation of constitutional rights"). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). If a subordinate has committed a constitutional violation, the liability of a supervisor "depends upon whether he set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir. 2007) (internal quotation marks omitted) (quoting *Watkins*, 145 F.3d at 1093).

Here, plaintiffs' complaint contains no factual allegations that, if proven, would demonstrate that defendant Christianson took any action with respect to the alleged constitutional deprivations. The allegations supporting this claim are not based on defendant Christianson's conduct, but are instead premised solely on his role as a supervisor. For instance, plaintiffs contend, that based upon his position as sheriff, defendant Christianson knew or should have known of the inadequacies of the Sheriff's Department's policies regarding excessive and

unreasonable uses of force.  (Doc. No. 1 at ¶ 22.)  However, bare allegations that a supervisor "knew or should have known" of misconduct are conclusory, and therefore not entitled to the presumption of truth.  *See Krainski v. Nev. ex rel. Bd. of Regents*, 616 F.3d 963, 969 (9th Cir. 2010) (dismissing a complaint because plaintiff "merely alleged in a conclusory fashion that the officers 'knew, or should have known'" of the violation); *Sullivan v. Biter*, No. 1:15-cv-00243-DAD-SAB, 2017 WL 1540256, at *1 (E.D. Cal. Apr. 28, 2017).  Left unsaid—both in the complaint and in plaintiffs' brief in opposition to the pending motion—is what defendant Christianson actually did or failed to do.

Accordingly, plaintiffs' use of excessive force claim against defendant Christianson will be dismissed with leave to amend.

**E.      Plaintiffs Nancy Osuna and Paul Osuna Have Sufficiently Pled a Violation of their Association Rights under the First and Fourteenth Amendments.**

Next, defendants seek dismissal of the second and third claims in the complaint, wherein plaintiffs Nancy Osuna and Paul Osuna assert violations of their associational rights under the First and Fourteenth Amendments as wife and son of the decedent.  Defendants argue that the familial association claim under the Fourteenth Amendment fails to allege sufficient facts to state a claim and that the associational claim under the First Amendment is duplicative of the familial association claim.   (*Id.* at 8–10.)

1.      The Fourteenth Amendment Familial Association Claim is Sufficiently Pled.

Under the Fourteenth Amendment, "official conduct that 'shocks the conscience' in depriving [family members] of [a liberty interest in the companionship and society of a family member] is cognizable as a violation of due process."  *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).  As the wife and son of the decedent, Nancy Osuna and Paul Osuna possess constitutionally protected liberty interests in the companionship and society of their husband and father, respectively.  *Morales v. City of Delano*, 852 F. Supp. 2d 1253, 1273–74 (E.D. Cal. 2012) (finding that spouses and children possess a constitutional interest in familial companionship with their spouse and parents).

/////

14

> In determining whether excessive force shocks the conscience, the court must first ask whether the circumstances are such that actual deliberation [by the officer] is practical. Where actual deliberation is practical, then an officer's "deliberate indifference" may suffice to shock the conscience. On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives. For example, a purpose to harm might be found where an officer uses force to bully a suspect or "get even."

*Wilkinson*, 610 F.3d at 554 (internal citation and quotation marks omitted). Defendants argue that plaintiffs have not alleged facts from which it could plausibly be found that any force used against the decedent shocked the conscience under either the deliberate indifference or purpose to harm standards. (Doc. No. 9-1 at 9.)

> As one judge of this court has observed
>> "The purpose to harm standard is a subjective standard of culpability." *A.D. v. California Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013). More specifically, "[i]t is the intent to inflict force beyond that which is required by a legitimate law enforcement objective that 'shocks the conscience' and gives rise to liability under § 1983 . . .." *Porter [v. Osborn]*, 546 F.3d [1131]at 1140 [(9th Cir. 2008)] (emphasis added).

*Kaur v. City of Lodi*, 263 F. Supp. 3d 947, 972 (E.D. Cal. 2017). Here, the complaint plausibly alleges that the force used against the decedent was unreasonable and excessive in that the decedent encountered multiple sheriff's deputies and was shot while unarmed. (Doc. No. 1 at ¶¶ 14–19.) Moreover, insofar as plaintiffs have plausibly alleged an underlying constitutional violation for use of excessive or unreasonable force, they have also plausibly alleged a violation of the right to familial association under the Fourteenth Amendment. *See, e.g.*, *Schwarz v. Lassen Cty. ex rel. Lassen Cty. Jail*, 628 F. App'x 527, 528 (9th Cir. 2016) ("Recovery for a violation of the right to familial association is generally contingent on the existence of an underlying constitutional violation."); *Gausvik v. Perez*, 392 F.3d 1006, 1008 (9th Cir. 2004) ("Since the claim of familial interference is directly related to all the other constitutional claims [], the other claims form an integral part of the claim relating to familial interference.").

/////

/////

Accordingly, the undersigned concludes that the complaint alleges sufficient facts to plausibly assert a violation of Nancy Osuna's and Paul Osuna's familial association rights under the Fourteenth Amendment.

    2.    <u>The First Amendment Association Claim is Not Duplicative of the Fourteenth Amendment Familial Association Claim.</u>

Nancy Osuna and Paul Osuna also allege violations of their associational rights under the First Amendment. (Doc. No. 1 at 9.) Defendants contend that this claim is duplicative of plaintiffs' familial association claim brought under the Fourteenth Amendment. (Doc. No. 9-1 at 9–10.)

Courts in this district have approached this issue differently. *Compare Reyes ex rel. Reyes v. City of Fresno*, No. CV F 13-0418 LJO SKO, 2013 WL 2147023, at *10 (E.D. Cal. May 15, 2013) ("The weight of authorities indicates that the Fourteenth Amendment is the more precise source for familial association rather than the First Amendment."), *with Schwartz v. Lassen Cty. ex rel. Lassen Cty. Jail*, No. 2:10-CV-03048-MCE, 2013 WL 5375588, at *10 (E.D. Cal. Sept. 24, 2013) ("The Ninth Circuit, as well as other district courts, has found that familial relationships, such as the parent-child relationship, are protected by the First and Fourteenth Amendments."). Recently, however, the Ninth Circuit noted that courts "analyze the right of intimate association in the same manner regardless [of] whether we characterize it under the First or Fourteenth Amendments." *Mann v. City of Sacramento*, 748 Fed. App'x 112, 115 (9th Cir. 2018).[3] The issue, then, is whether Nancy Osuna and Paul Osuna should be permitted to allege violations of their associational rights under both the First and Fourteenth Amendments.

Defendants contend that "when a particular Amendment provides an explicit textual source of constitutional protection against particular government conduct, that Amendment must be the guide." (Doc. No. 9-1 at 9) (citing *Reyes*, 2013 WL 2147023 at *10). However, "it is the case law setting out the contours of the Fourteenth Amendment, and not the Fourteenth Amendment itself, which provide the precise source of the familial association right." *Schwartz*,

---

[3] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

2013 WL 5375588 at *10.  Moreover, the Ninth Circuit has noted that, like the Fourteenth

Amendment, "[t]he First Amendment also protects family relationships[] that presuppose deep

attachments and commitments to the necessarily few other individuals with whom one shares not

only a special community of thoughts, experiences, and beliefs but also distinctively personal

aspects of one's life."  *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018) (internal quotation

marks and citation omitted); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir.

2001).  "Accordingly, [the Ninth Circuit] ha[s] held that claims under both the First and

Fourteenth Amendment for unwarranted interference with the right to familial association could

survive a motion to dismiss."  *Id.*

Having already found that they have sufficiently alleged violations of their familial

association rights under the Fourteenth Amendment, the court concludes that the claim brought

for violation of their associational rights under the First Amendment by plaintiffs Nancy Osuna

and Paul Osuna survives defendants' motion to dismiss as well.

**F.      The Estate's Claim Alleging Excessive Force in Violation of the California**

**          Constitution Does Not Fail as a Matter of Law.**

Next, defendants seek dismissal of plaintiffs' fourth claim, which alleges excessive force

in violation of Article 1, Section 13 of the California Constitution.  Defendants argue this claim is

foreclosed as a matter of law.  (Doc. No. 9-1 at 10.)

"The California Supreme Court has … not decided whether there is a private cause of

action for damages under article I, section 13, which protects against unreasonable searches and

seizures."  *Julian v. Mission Cmty. Hosp.*, 11 Cal. App. 5th 360, 392 (2017).  Federal district

courts in California are split on this question.  *Compare, e.g.*, *Silva v. San Pablo Police Dep't*,

319 F. Supp. 3d 1198, 1202–03 (N.D. Cal. 2018) ("[I]t seems likely the California courts would

determine that Article I, Section 13 creates a private right of action for a damages remedy, but

they have not yet decided this important issue of state law."); *Daniel v. City of Antioch*, No. C-13-

1084 MMC, 2013 U.S. Dist. LEXIS 138895, at *6 (N.D. Cal. Sept. 25, 2013) (same); *Camarillo

v. City of Maywood*, No. CV 07-3469 ODW (SHX), 2008 WL 4056994, at *6 (C.D. Cal. Aug. 27,

2008) (same); *Smith v. County of Riverside*, No. EDCV 05-512-VAP, 2006 U.S. Dist. LEXIS

98213, at *21 (C.D. Cal. May 16, 2006) (same), *with e.g.*, *Autotek Inc. v. County of Sacramento*, No. 2:16-cv-01093-KJM-CKD, 2017 WL 3149923, at *9 (E.D. Cal. July 25, 2017) ("California Constitution Article I section 13, upon which this claim rests, does not confer a private right of action for damages."); *Garner v. City & County of San Francisco*, No. 14-CV-05172-EDL, 2016 WL 10859785, at *7 (N.D. Cal. Feb. 23, 2016) (same); *Cabral v. County of Glenn*, 624 F. Supp. 2d 1184, 1196 (E.D. Cal. 2009) (same); *Manning v. City of Rohnert Park*, No. C 06-03435 SBA, 2007 WL 1140434, at *1 (N.D. Cal. Apr. 17, 2007) ("Neither the plain language of the article I, section 13, nor the available legislative history indicate an intent on behalf of the California Legislature to permit the recovery of monetary damages for its violation.").

Whether a provision of the California Constitution provides for a private right of action is governed by the analysis set forth in *Katzberg v. Regents of the University of California*, 29 Cal. 4th 300 (2002). *Katzberg* employs a two-step approach. First, the court must consider "whether there is evidence from which [it] may find or infer, within the constitutional provision at issue, an affirmative intent either to authorize or to withhold a damages action to remedy a violation." *Id.* at 317. In making this determination, courts look to the language and history of the provision, as well as to whether it contains guidelines, mechanisms, or procedures implying a monetary remedy. *Id.* Second, if the court finds no affirmative intent either to authorize or prohibit a private right of action, the court must undertake the "constitutional tort" analysis first laid out in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). *Id.* Several factors are relevant to this inquiry, including (1) whether an adequate remedy exists, (2) the extent to which a constitutional tort action would change established tort law, and (3) the nature and significance of the constitutional provision. *Id.* If these factors counsel against recognizing a private right of action, the inquiry ends. *Id.* Alternatively, if these factors favor recognizing a constitutional tort, the court must consider "special factors, . . . including deference to legislative judgment, avoidance of adverse policy consequences, considerations of government fiscal policy, practical issues of proof, and the competence of courts to assess particular types of damages." *Id.*

As the framework addressed above demonstrates, the *Katzberg* analysis is quite complex. Here, however, defendants have not briefed the issue at all. In their motion and reply, defendants

merely cite other district court decisions finding the absence of a private right of action.  .  The district court decisions cited by defendants are neither binding nor particularly persuasive, and the court declines to delve into this analysis without appropriate briefing.  *See Shen v. Albany Unified Sch. Dist.*, No. 3:17-CV-02478-JD, 2018 WL 4053482, at *4 (N.D. Cal. Aug. 24, 2018) ("Defendants have not done [*Katzberg*] justice by making what is effectively a passing reference to it in their briefs, and the Court declines to take it up in that underdeveloped form.").  Defendants bear the burden of proof on their motion to dismiss, and here, they have failed to carry it.  *Welchen v. County of Sacramento*, No. 2:16-cv-00185-TLN-KJN, 2016 WL 5930563, at *10 (E.D. Cal. Oct. 11, 2016); *Sevey v. Soliz*, No. C 10-3677 LHK PR, 2011 WL 2633826, at *3 (N.D. Cal. July 5, 2011).  Accordingly, the undersigned declines to dismiss on this basis.

Defendants argue in the alternative that even if Article I, Section 13 of the California Constitution does provide a private right of action, Sheriff Christianson is immune from liability pursuant to California Government Code § 820.8.  (Doc. No. 9-1 at 11–12.)  That provision provides that, "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person."  As noted above in addressing plaintiffs' cause of action for the alleged unreasonable use of force, the complaint contains no factual allegations sufficient to state such a claim against defendant Christianson.  That same analysis applies here.  Accordingly, plaintiffs' fourth cause of action alleging excessive use of force in violation of article 1, § 13 of the California Constitution will be dismissed as to defendant Christianson only and with leave to amend.

**G.    Plaintiffs Have Sufficiently Pled Bane Act Violations Against Defendants.**

Next, defendants move for dismissal of plaintiffs' fifth cause of action, a Bane Act claim, seemingly arguing that the complaint contains no factual allegations that any defendant used threats, intimidation, or coercion with the specific intent to violate decedent's rights.  (Doc. No. 9-1 at 11.)  Defendants' argument on this point is threadbare and difficult to decipher.  It appears defendants' argument may be based on the contention that the complaint inadequately alleges a specific intent by defendants to violate some right.  (*Id.*)

/////

19

To state a Bane Act claim, "[a] plaintiff must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015), *as modified on denial of reh'g* (Mar. 6, 2015); *see also Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766, 802 n.31 (2017) (collecting cases and agreeing with those holding that "in Bane Act cases . . . where Fourth Amendment unreasonable seizure or excessive force claims are raised and intentional conduct is at issue, there is no need for a plaintiff to allege a showing of coercion independent from the coercion inherent in the seizure or use of force") (internal quotation marks and brackets omitted), *as modified* (Nov. 17, 2017), *and review denied* (Feb. 28, 2018). On the facts alleged in the complaint—specifically, a physical altercation between law enforcement officers and decedent, resulting in decedent's death—the court is satisfied that a viable Fourth Amendment claim has been alleged. Under the holding in *Cornell*, that allegation of excessive use of force also suffices to establish threats, intimidation, or coercion. Nothing more is required to state a cognizable Bane Act claim. Accordingly, the court will reject defendants' argument to the contrary.

Defendants also repeat their argument, already addressed above, that defendant Christianson is entitled to immunity from the Bane Act claims. That argument is equally applicable here. Because the complaint contains no factual allegations against defendant Christianson, this cause of action will be dismissed only with respect to him and leave to amend will be granted in that regard as well.

**H.      Plaintiffs Have Sufficiently Pled Negligence Claims Against Doe Defendants 1–25, But Not Against Defendant Christianson or Doe Defendants 26–50.**

Next, defendants move to dismiss plaintiffs' fourth and seventh cause of action to the extent they sound in negligence.[4]  (Doc. No. 9-1 at 12.)  Plaintiffs' theory of negligence is

---

[4]  Plaintiffs' fourth cause of action is not presented as a negligence claim, but rather as a claim brought under the Article I, § 13 of the California Constitution.  Defendants cite no authority suggesting that claims brought under that constitutional provision are treated in the same manner as negligence claims, and the court has found none.  Accordingly, the court's analysis here is confined to plaintiffs' seventh cause of action.

20

twofold. First, plaintiffs allege that Does 1 to 25 breached a duty owed to the decedent by using excessive force against him. (Doc. No. 1 at ¶ 68.) Second, plaintiffs allege that defendant Christianson and Does 26 to 50 breached a duty owed to the decedent by hiring, retaining, and failing to adequately train and supervise Does 1 to 25. (*Id.* at ¶ 69.) As to both theories, plaintiffs argue that both Stanislaus County and the Stanislaus County Sheriff's Department are liable on a *respondeat superior* theory. (*Id.* at ¶ 70.) Defendants contend that under California law, negligence may not be based on allegations of inadequate supervision, training, or discipline, and therefore, all causes of action brought under such a theory of liability should be dismissed. (Doc. No. 9-1 at 12.)

In support of their argument that negligence claims are categorically barred if based upon allegations of inadequate supervision, training, or discipline, defendants cite the decision in *Munoz v. City of Union City*, 120 Cal. App. 4th 1077 (2004). In *Munoz* the California Court of Appeal noted that under Government Code § 815, "a public entity is not liable for an injury, except as otherwise provided by statute." 120 Cal. App. 4th at 1111 (internal quotation marks and brackets omitted) (quoting *Zelig v. County of Los Angeles*, 27 Cal. 4th 1112, 1127 (2002)). A subsequent decision of the California Supreme Court explained the holding in *Munoz* as follows:

> in [Munoz], the relatives of a woman shot by police, who had been summoned because of her erratic behavior, sued the officer who shot her and his employing city. The appellate court held the city could be vicariously liable for the officer's unreasonable use of deadly force, but rejected a theory of direct liability based on the city's negligence in the selection, training, retention, supervision, and discipline of police officers. As no statute made a public entity liable for this type of negligence, no direct liability could be established under section 815 as interpreted in *Eastburn v. Regional Fire Protection Authority*, 31 Cal. 4th 1175 (2003). The court went on to reject the plaintiffs' argument that the city's negligence was actually the basis for vicarious liability because public entities' negligence liability is inherently vicarious.

*C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861, 875 (2012) (internal quotation marks and citations omitted). Thus, the state appellate court in *Munoz* found that under California law, "no . . . provision makes public agencies liable for their own negligent conduct or omission to the same extent as a private person or entity." 120 Cal. App. 4th at 1111.

/////

21

Defendants' argument is unpersuasive in several respects. First, the decision *Munoz* would appear relevant only with respect to public entities, which in this case are the County and the Sheriff's Department. However, plaintiffs' cause of action for negligence is also alleged against defendant Christianson and the Doe defendants. Defendants offer no explanation as to how the decision in *Munoz* has any applicability to those defendants. Second, in *William S. Hart*, 53 Cal. 4th 861, 873 (2012), the California Supreme Court distinguished the holding in *Munoz* and rejected the argument advanced by defendants here. In that case, the plaintiff alleged that a school district's administrators knew or should have known of a guidance counselor's dangerous propensities, "but nevertheless hired, retained and failed to properly supervise her." *William S. Hart*, 53 Cal. 4th at 875. The California Supreme Court held that these allegations, if true, "could make the District liable under a vicarious liability theory." *Id.* Defendants are therefore incorrect in arguing that "California does not recognize the tort" of a negligent failure to supervise, train, or discipline. (Doc. No. 9-1 at 12.) Moreover, the holding in *William S. Hart* demonstrates that the public entity itself may be held liable in appropriate circumstances. As with other torts, "the general rule is that an employee of a public entity is liable for his torts to the same extent as a private person . . . and the public entity is vicariously liable for any injury which its employee causes . . . to the same extent as a private employer." *William S. Hart*, 53 Cal. 4th at 868; *see also de Villers v. County of San Diego*, 156 Cal. App. 4th 238, 249 (2007) ("When assessing a claim for vicarious liability against a governmental employer based on the acts or omissions of its employee, a court must examine whether the employee who acted or failed to act would have been personally liable for the injury.").

Nonetheless, "[i]n order to prove facts sufficient to support a finding of negligence, a plaintiff must show that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes v. County of San Diego*, 57 Cal. 4th 622, 629 (2013) (brackets omitted). With respect to whether a cognizable duty exists here, plaintiffs allege that defendant Sheriff Christianson and Does 26 to 50, as policy-making authorities, had a duty of care to adequately hire, retain, and train the law enforcement officers under their command. (Doc. No. 1 at ¶ 69.) However, California law does not recognize

a general duty of care on the part of supervisors with respect to negligent hiring, retention, or training. Rather, as explained by the California Supreme Court in *William S. Hart*, "the potential legal responsibility of District administrators and supervisors for negligently hiring or retaining . . . arises from the special relationship they had with plaintiff." 53 Cal. 4th at 877; *accord Kendrick v. County of San Diego*, No. 15-cv-2615-GPC(AGS), 2018 WL 1316618, at *10 (S.D. Cal. Mar. 14, 2018) ("[A] plaintiff must allege a special relationship in order to bring a negligent hiring claim"); *Lindsay v. Fryson*, No. 2:10-cv-02842-LKK-KJN, 2012 WL 2683019, at *6 (E.D. Cal. July 6, 2012) (noting that *William S. Hart* "limited the viability of type of vicarious liability claim at issue . . . to situations where the supervisory or administrative personnel have a 'special relationship' with the plaintiff or class of plaintiffs"), *findings and recommendations adopted*, 2012 WL 3727157 (E.D. Cal. Aug. 27, 2012). In finding such a special relationship, the California Supreme Court noted that "a school district and its employees have a special relationship with the district's pupils, a relationship arising from the mandatory character of school attendance and the comprehensive control over students exercised by school personnel, analogous in many ways to the relationship between parents and their children." *William S. Hart*, 53 Cal. 4th at 869; *see also de Villers,* 156 Cal. App. 4th at 249 (declining to impose vicarious liability on the County based upon the actions of its employees after finding that those employees had no "special protective relationship to the victim"). Therefore, whether defendant Christianson and the unnamed policy-making defendants may be held directly liable for negligent hiring, retention, and failure to train, and whether the County and Sheriff's Department may be held vicariously liable on that basis, turns on whether defendant Christianson and the unnamed policy-making defendants had a special relationship with the decedent.

In arguing that a special relationship exists here, plaintiffs note that several courts have recognized the existence of a "special relationship" between arresting officers and arrestees. (Doc. No. 13 at 34.) This argument is misplaced. There is no allegation in plaintiffs' complaint that the officers who encountered the decedent were also responsible for the Department's hiring or training practices. The question is not whether the arresting officers had a special relationship with the decedent, but rather whether the supervisors responsible for hiring, training, disciplining,

and so forth had such a special relationship.  Here, plaintiffs offer no argument as to how defendant Christianson's duty of care towards the decedent amounted to anything more than the general duty to use reasonable care.  Rather than alleging a "special relationship" with the decedent, the complaint before the court does not allege that defendant Christianson or any of the unnamed policy-making defendants had any relationship with the decedent at all.

In addition, other district courts have declined to find such a relationship under circumstances similar to those presented here.  *See Kendrick*, 2018 WL 1316618, at *11 ("Here, Plaintiff does not allege a special relationship existed between [the decedent] and Sheriff Gore. Therefore, Sheriff Gore cannot be personally liable for a claim of negligent hiring and supervision and consequently, the County cannot be vicariously liable under California Government Code section 815.2."); *Fuentes v. City of San Diego*, No. 3:16-cv-02871-BEN-JMA, 2017 WL 2670976, at *3 (S.D. Cal. June 20, 2017) ("Plaintiffs generally allege that the City and/or SDPD have a duty to protect people from harm and exercise care in selection, retention, training, and supervision of their employees.  However, these alleged duties do not resemble the enhanced duties imposed on school personnel that formed the basis for their special relationship with the minor plaintiff in *William S. Hart*."); *Willis v. County of Sacramento*, No. 2:13-cv-01671-MCE-EFB, 2014 WL 1027070, at *6 (E.D. Cal. Mar. 14, 2014) (citing *William S. Hart* and dismissing plaintiff's claim against the county sheriff for negligent hiring, supervision, and retention "because Plaintiff did not allege that a duty existed between [the sheriff] and Plaintiff"); *Lindsay*, 2012 WL 2683019, at *7 (concluding, in a case alleging that Yuba County Child Protective Services negligently supervised, hired, and retained its employees, that "there are no allegations suggesting that . . . supervisors undertook or otherwise had a special relationship with plaintiff").

Accordingly, the court will dismiss plaintiffs' seventh cause of action to the extent it is based upon negligent hiring, retention, training, or supervision, with leave granted to plaintiffs to amend their complaint with regard to the existence of a special relationship.  In addition, as discussed above, plaintiffs' failure to include any factual allegations as to defendant Christianson necessitates dismissal of this cause of action in its entirety as to him, regardless of the basis of the claim.  Leave to amend, however, will be granted.

24

**I.    Plaintiffs Nancy Osuna and Paul Osuna Have Sufficiently Pled a Wrongful Death Claim Against Doe Defendants 1–25, But Not Against Defendant Christianson or Doe Defendant 26–50.**

Finally, defendants seek dismissal of the eighth cause of action, a wrongful death claim brought by decedent's wife and son.  Defendants argue that plaintiffs' allegations with regard to this claim are conclusory in nature and do not state a claim for relief.  (Doc. No. 9-1 at 13.)  They also argue, as they did with respect to plaintiffs' negligence claim, that public entities may not be held liable for negligent selection, training, retention, supervision, and discipline.  (Doc. No. 9-1 at 13.)  Plaintiffs acknowledge that under California Government Code § 815, "direct tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care."  (Doc. No. 13 at 38.)  However, plaintiffs contend that California Code of Civil Procedure § 377.60 provides that certain individuals may assert a "cause of action for the death of a person caused by the wrongful act or neglect of another."  (*Id.*)

"A wrongful death claim may be brought by the 'surviving spouse, domestic partner, children, and issue of deceased children' of the decedent."  *Raymond v. Martin*, No. 1-18-cv-00307-DAD-JLT, 2018 WL 4560686, at *2 (E.D. Cal. Sept. 20, 2018) (citing Cal. Civ. Proc. Code § 377.60(a)).  "The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs."  *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1263 (2006) (citation, internal quotation marks, and emphasis omitted).

Here, plaintiffs Nancy Osuna and Paul Osuna have sufficiently alleged a wrongful death claim against Doe Defendants 1–25 because their complaint plausibly alleges that these defendants employed excessive force against the decedent and, in doing so, breached their duty to use reasonable force.  However, plaintiffs have failed to allege a plausible wrongful death claim against defendant Christianson and Doe defendants 26–50 because, as discussed above, they have failed to allege a viable negligence claim against these defendants.  *See A.C. v. Griego*, No. 2:16-cv-00746-JAM-CKD, 2016 WL 5930592, at *5 (E.D. Cal. Oct. 12, 2016) (finding that in the
/////

absence of a special relationship, "there is no negligence liability, which means there can be no liability for wrongful death").

Accordingly, the cause of action for wrongful death based on negligent hiring, retention, and/or supervision brought by plaintiffs Nancy Osuna and Paul Osuna is dismissed with leave to amend. Once again, and as discussed above, plaintiffs' failure to include any factual allegations as to defendant Christianson necessitates dismissal of this cause of action as to him in its entirety, with leave to amend.

**CONCLUSION**

For the reasons explained above,

1.      Defendants' motion to dismiss (Doc. No. 9) is granted in part;

2.      Plaintiffs' first, fourth, fifth, seventh, and eighth causes of action are dismissed with respect to defendant Christianson with leave to amend;

3.      Plaintiffs' seventh and eighth causes of action are dismissed with leave to amend to the extent those claims are predicated upon an alleged failure to adequately hire, retain, train, or supervise;

4.      Defendants' motion to dismiss (Doc. No. 9) is denied in all other respects; and

5.      Within twenty-one days from the date of service of this order, plaintiffs are directed to either file an amended complaint or notify the court of their intent to proceed only on those claims found to be cognizable in this order.

IT IS SO ORDERED.

Dated:   **June 24, 2019**                                    _____

UNITED STATES DISTRICT JUDGE